IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

**ROBERT POLSON and**
**MARY POLSON,**

**Plaintiffs,**

**v.**

**COTTRELL, INC.,**
**JACK COOPER TRANSPORT**
**COMPANY, and GENERAL MOTORS**
**CORPORATION,**

**Defendants.**                                    **No. 04-CV-822-DRH**

## MEMORANDUM and ORDER

**HERNDON, District Judge:**

### I. Introduction and Background

Pending before the Court is Defendant Jack Cooper Transport Company's motion to dismiss for lack of subject matter jurisdiction (Doc. 31). Jack Cooper Transport Company argues that the Court lacks subject matter jurisdiction over Plaintiffs' claims against it as Plaintiffs' exclusive remedy is pursuant to the Illinois Workers' Compensation Act. Plaintiffs oppose the motion. Based on the following, the Court grants the motion to dismiss.

On October 10, 2004, Plaintiffs Robert and Mary Polson filed a seven-count complaint in the Madison County, Illinois Circuit Court against Cottrell, Inc.

("Cottrell"), Jack Cooper Transport Company ("Jack Cooper") and General Motors Corporation ("General Motors") (Doc. 2). The Polsons' claims arise from a February 19, 2003 incident wherein Robert was injured while operating the chain and ratchet tie down system of a rig designed and distributed by Cottrell as part of his duties as car hauler for Jack Cooper. Count I is against Cottrell for strict liability; Count II is against Cottrell for negligence; Count III is against Cottrell for breach of implied warranty; Count IV is against General Motors for negligence; Count V is against all Defendants based on a conscious disregard theory; Count VI is brought by Mary against all Defendants for loss of consortium and Count VII is against Jack Cooper for an intentional tort.

On December 1, 2004, Cottrell removed the case to this Court based on the federal diversity statute, **28 U.S.C. § 1332** (Doc. 1). That same day, both Jack Cooper and General Motors filed consents to the removal (Docs. 3 & 4).

## II. Analysis

Cottrell removed the case to this Court based on the federal diversity statute, **28 U.S.C. § 1332**. Under **28 U.S.C. § 1441**, removal is proper over any action that could have been filed originally in federal court. However, if the district court lacks subject matter jurisdiction, the matter must be remanded to state court pursuant to **28 U.S.C. § 1447(c)**, Courts presume a plaintiff's choice of forum is proper and valid and resolve all doubts regarding jurisdiction in favor of remand. ***See Doe v. Allied-Signal, Inc.*, 985 F.2d 908, 911 (7th Cir. 1993)**. The diversity

statute requires complete diversity between the parties plus an amount in controversy which exceeds $75,000, exclusive of interest and cost. Complete diversity of citizenship means that "none of the parties on either side of the litigation may be a citizen of a state of which a party on the other side is a citizen." **Howell v. Tribune Entertainment Co., 106 F.3d 215, 217 (7th Cir. 1997)(citations omitted)**. Here, it is undisputed that the amount in controversy is met. The problem is that both the Polsons and Jack Cooper are citizens of Missouri.[1] Therefore, unless Jack Cooper's citizenship is disregarded, there is no federal jurisdiction over the Polsons' claims.

The question of whether the Court has jurisdiction over the Polsons' claims turns on whether Jack Cooper was fraudulently joined as a defendant. In the context of fraudulent joinder, "fraudulent" is a term of art. **See Poulos v. Naas Foods, Inc., 959 F.2d 69, 73 (7th Cir. 1992)**. "Although false allegations of jurisdictional fact may make joinder fraudulent, . . . in most cases fraudulent joinder involves a claim against an in-state defendant that simply has not chance of success, whatever, the plaintiff's motives. **Id. (collecting cases)**. It is true that, as a general rule, the right of removal cannot be defeated "by a fraudulent joinder of a resident defendant having no real connection with the controversy." **Wilson v. Republic Iron & Steel Co., 257 U.S. 92, 97 (1921)**. To prove fraudulent joinder the defendant must "show there exists no 'reasonable possibility that a state court would rule

---

[1] Cottrell is a Georgia citizen and General Motors is a citizen of both Michigan and Delaware.

against the [in-state] defendant,'" **Schwartz v. State Farm Mutual Auto. Ins. Co., 174 F.3d 875, 878 (7th Cir. 1999)(citing Poulos, 959 F.2d at 73)**, or "if a state court has come to judgment, there [is not] any reasonable possibility that the judgment will be reversed on appeal." **Poulos, 959 F.2d at 73**. The defendant bears of heavy burden in this regard. **Id.** Thus, even if a state court might ultimately find that Plaintiffs failed to state a claim against Jack Cooper joinder of Jack Cooper was not "'fraudulent' for purposes of this court's jurisdiction so long as the issue of state law is subject to reasonable argument on both sides." **See Batoff v. State Farm Insurance Co., 977 F.2d 848, 853 (3rd Cir.1992) (if "intricate analysis of state law" is needed to dismiss claim, the claim may not be disregarded for purposes of diversity jurisdiction)**.

The Court must turn to the Polsons' allegations against Jack Cooper to determine whether after resolving all issues of fact and law in favor of the Polsons, they can establish a cause of action against Jack Cooper. Because the parties have raised a choice of law issue, the Court must first decide which states law applies in this case, Missouri or Illinois. Federal courts sitting in diversity apply the choice-of-law rules of the forum state to determine the applicable substantive law. **Hinc v. Lime-O-Sol, 382 F.3d 716, 719 (7th Cir. 2004)(citations omitted)**. For tort claims, Illinois follows the most significant relationship test of the Restatement (Second) of Conflicts of Law. **Ingersoll v. Klein, 262 N.E.2d 593 (Ill. 1970)**. "Under this test, the law of the place of injury controls unless Illinois has a more

significant relationship with the occurrence and with the parties." **Id. at 595**. When applying this test the court considers: (1) where the injury occurred; (2) where the injury causing conduct occurred; (3) the domicile of the party; and (4) where the relationship of the parties is centered. **Id. at 47, 262 N.E.2d 593**. The Illinois courts also consider "the interests and public policies of potentially concerned states ... as they relate to the transaction in issue." ***Jones v. State Farm Mut. Auto. Ins. Co.*, 682 N.E.2d 238, 249 (Ill. App. 1997)**.

On balance, the Court finds that Illinois has the most significant contacts and a more significant interest in resolving this litigation, as the injury occurred in McClean, Illinois. Further, the totality of factors weighs in favor of applying Illinois law as Polson filed an Application for Adjustment of Claim with the Illinois Industrial Commission, received workers' compensation benefits under the Illinois Workers' Compensation Act and filed his personal injury lawsuit in an Illinois State Circuit Court.

Applying Illinois law, the Court must now determine whether the Polsons can maintain a cause of action against Jack Copper despite the Illinois Workers' Compensation Act's exclusivity remedy doctrine, **820 ILCS 305/1 et seq.**.

"On February 19, 2003, Robert Polson, was performing his normal work duties as a car hauler for his employer in Illinois." (Doc. 2, p. 2, ¶ 4). "[P]laintiff, while attempting to perform his normal work activities in an intended and/or foreseeable fashion while using a ratchet, idler, hook and chain during normal

procedures by which he was trained, sustained severe and permanent injuries to his neck, spine and related areas while exerting required and/or foreseeable force and pressure." (Doc. 2, p. 3, ¶ 9).  That same day, Polson reported that he had been injured to his employer Jack Cooper.  On March 6, 2003, Polson began receiving workers' compensation benefits as a result of the February 19, 2003 accident, including payment of medical expenses and temporary total disability benefits ("TTD") pursuant to the Missouri Workers' Compensation Act.[2]  Thereafter, Polson filed an Application for Adjustment of Claim with the Illinois Industrial Commission on March 27, 2003.  On June 19, 2003, Jack Cooper began paying Polson TTD at the higher Illinois rate and has continued paying Polson TTD at the Illinois rate to the present.  (Doc. 44, Exhibit A).  Also on June 19, 2003, Jack Cooper issued a check to Polson representing the difference between what had been paid to Polson under the Missouri TTD rate and what he would have received under the higher Illinois rate.  (Doc. 44, Exhibit A).

        Jack Cooper maintains that the exclusivity remedy doctrine of the Illinois Workers' Compensation Act bars Polsons' claims.  On the other hand, the Polsons argue that they have a viable cause of action against Jack Cooper because the mere filing of a worker's compensation pleadings/claim does not constitute a bar to the simultaneous pursuit of a lawsuit sounding in fraud or other intentional torts.

---

[2] According to Plaintiffs, Jack Cooper filed the application for Missouri workers' compensation benefits on Polson's behalf "knowing full well Illinois is where the injury occurred. JCT did this for the obvious reason that it wanted to pay reduced Missouri benefits and deprive plaintiffs of his choice of treating physicians."  (Doc. 34, p. 2).

Based on the following, the Court finds that the Polsons' claims against Jack Cooper are barred by the exclusivity remedy doctrine.

"The Workers' Compensation Act is designed to provide financial protection to workers for accidental injuries arising out of and in the course of employment." ***Meerbrey v. Marshall Field and Co., Inc.*, 564 N.E.2d 1222, 1225 (Ill. 1990)**. "Accordingly, the Act imposes liability without fault upon the employer and, in return, prohibits common law suits by employees against the employer." ***Id.*** "The exclusive remedy provision 'is part of the *quid pro quo* in which the sacrifices and gains of employees and employers are to some extent put in balance, for, while the employer assumes a new liability without fault, he is relieved of the prospect of large damage verdicts.' " ***Id.* (quoting 2A A. Larson, *Law of Workmen's Compensation* § 65.11 (1988))**. Thus, injured employees are not permitted to seek and recover both compensation under the Act and common law damages resulting from allegations that their injuries were intentionally caused by their employers. ***Collier v. Wagner Castings Co.*, 408 N.E.2d 198, 203 (Ill. 1980)**.

In order to avoid the exclusivity bar of sections 5(a) and 11 of the Act, a plaintiff must prove "'either that the injury (1) was not accidental (2) did not arise from his or her employment, (3) was not received during the course of employment or (4) was not compensable under the Act.'" ***Zurowska*, 667 N.E.2d at 590 (quoting *Fregeau v. Gillespie*, 451 N.E.2d 870 (Ill. 1983))**. Once the employee

takes the express position that the injury is compensable under the Act, he is subsequently barred from taking the mutually exclusive position that the injury was intentional.

However, the Illinois Supreme Court "has stated that an employee 'out of caution or uncertainty,' may file a common law action against an employer, though he has already filed a workers' compensation claim." ***Zurowska v. Berlin Industries, Inc.*, 667 N.E.2d 588, 590 (Ill. App. 1996)(quoting *Fregeau v. Gillespie*, 451 N.E.2d at 873**. This enables the employee who is uncertain of the proper basis of recovery to toll the statute of limitations on the civil action. ***Id.* (citing *LaGrassa v. Panozzo*, 522 N.E.2d 752 (Ill. App. 1988))**. "It is clear that recovery of payments from the employer under both actions is what is prohibited. As the supreme court noted in *Rhodes*, the Act was designed to 'serve as a substitute for an employee's common law right of action and not as a supplement to it." ***James v. Caterpillar Inc.*, 611 N.E.2d 95, 104 (Ill. App. 1996).**

Here, Plaintiffs argue that the claims are not barred because the mere filing of a workers' compensation pleading does not constitute a bar to the simultaneous pursuit of a lawsuit sounding in fraud or other intentional torts. Plaintiffs further argue that the benefits he received were "voluntary." The Court does not agree.

In ***Copass v. Illinois Power*, 569 N.E.2d 1211 (Ill. App. 1991),**[3] "the

---

[3]In ***Copass***, the plaintiff's husband was killed in a job-related explosion. "Within three days of the death, the decedent's employer began making payments to the plaintiff, informing her

court distinguished between benefits received voluntarily from the employer and those benefits received as a result of taking some action before the Commission. The court explained:

> '[P]laintiff in the present case has neither taken action before the Commission nor asserted any other way that her husband's death is compensable under the Act. We hold that uninitiated payments plaintiff accepted from Illinois Power are not sufficient to constitute her election to the benefits provided by the Act. Simply accepting voluntary payments from Illinois Power, without taking any affirmative action before the Illinois Commission, is not a clear and unequivocal act evidencing an assertion that the death is compensable under the Act."

"In summary, a party who seeks and accepts workers' compensation benefits is prohibited from subsequently filing suit against the provider of those benefits. ... It is only when one actively seeks benefits and obtains them as a result of those efforts that she is barred from pursuing common law claim." ***Wren v. Reddick Community Fire Protection District*, 785 N.E.2d 1052, 1058 (Ill. App. 2003)**.

In the case at bar, Polson has sought (his March 27, 2003 Application for adjustment of claim withe the Illinois Industrial Commission) and recovered benefits (he has received benefits from Jack Cooper under the Illinois Workers' Compensation Act from June 19, 2003 to the present). Thus, unlike the Plaintiff in ***Copass***, the plaintiff has taken some express action indicating his injury was compensable under the Act. Furthermore, given that under section 8(b) of the Act,

---

she was entitled to them under the Act. She later filed a civil action against decedent's employer alleging his death resulted from an intentional tort; she never filed a claim in the Commission, executed a written settlement of a claim 'nor asserted in any other way that her husband's death [was] compensable under the Act.'" ***Zurowska*, 667 N.E.2d at 591 (quoting *Copass*, 569 N.E.2d at 1215)**.

an employer must pay TTD to an employee whose total incapacity lasts more than three working days, it seems improper to classify the payments made by Jack Cooper as "voluntary."  In addition, Illinois Appellate Courts have held, following the Illinois Supreme Court's decisions, "that the filing of a claim under the Act, accompanied by the receipt of compensation under the Act, whether as a result of a final award by the Commission or by settlement between the parties, constitutes a bar to a tort claim that the injury was intentionally caused."  **Zurowska, 667 N.E.2d at 591 (citing *James v. Caterpillar, Inc.*, 611 N.E.2d 95, 103 (Ill. App. 1996))**.  The Polsons cannot reap the benefits of the Act and then deny its applicability.  Thus, the Court finds that the Polsons' claims are barred by the exclusivity remedy of the Act.  Further, the Court finds that Jack Cooper was fraudulently joined and grants Jack Cooper's motion to dismiss.  Because Jack Cooper was fraudulently joined, the Court has subject matter jurisdiction over the Polsons' remaining claims against Cottrell and General Motors.

### III.  Conclusion

The Court finds that the claims against Jack Cooper are barred by the exclusivity remedy of the Illinois Workers' Compensation Act and that Jack Cooper was fraudulently joined.  The Court **GRANTS** Jack Cooper Transport's motion to dismiss for lack of subject matter jurisdiction (Doc. 31) and **DISMISSES** with prejudice Jack Cooper from this case.

**IT IS SO ORDERED**.

Signed this 17th day of May, 2005.

<u>/s/    David RHerndon</u>
**United States District Judge**