IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

**ROBERT POLSON and**
**MARY L. POLSON,**

**Plaintiffs,**
v.                                                              No. 04-CV-882-DRH
**COTTRELL, INC., et al.,**

**Defendants.**

### MEMORANDUM AND ORDER

**HERNDON, District Judge:**

Now before the Court is Defendant's Rule 59 motion to reconsider Order denying motion to bar Plaintiffs' expert Linda Weseman from testifying (Doc. 129). Plaintiffs oppose the motion (Doc. 129). Based on the following, the Court denies the motion.

Strictly speaking, a motion to reconsider does not exist under the Federal Rules of Civil Procedure. ***Hope v. United States*, 43 F.3d 1140, 1142 (7th Cir. 1995)**. Despite this fact, such motions are routinely presented, and this Court will consider them if timely-filed. If filed within ten days of the entry of a judgment or order in the case, the motions are construed as motions to alter or amend under **Federal Rule of Civil Procedure 59(e)**. ***See Britton v. Swift Transportation Co., Inc.*, 127 F.3d 616, 618 (7th Cir. 1997)("the key factor in determining whether a 'substantive' motion is cognizable under Rule 59 or 60 is its timing");** ***Mendenhall v. Goldsmith*, 59 F.3d 685, 689 (7th Cir.), cert. denied, 516 U.S.**

**1011 (1995)("any post-judgment substantive motion that is made within ten days of the entry of judgment is deemed a Rule 59(e) motion.").**

A Rule 59(e) motion "must clearly establish either a manifest error of law or fact or must present newly discovered evidence." ***LB Credit Corp v. Resolution Trust Corp.*, 49 F.3d 1263, 1267 (7th Cir. 1995).** *citations omitted.* It is at a district court's discretion as to whether reconsideration is warranted under Rule 59(e). ***See Pickett v. Prince*, 207 F.3d 402, 407 (7th Cir. 2000).**

Here, Cottrell maintains that the Court's March 28, 2007 Order denying its motion to bar Weseman contains a mistake of fact in that this case does not involve rear-loading skids, but ratchets, and that Ms. Weseman has refused to discuss her ratchet work for Boystun post contract formation. Plaintiffs oppose the motion arguing that Weseman did not rely on any confidential communications with Boydstun in forming her opinions in this case.

As noted in the Court's March 28, 2007 Order, the Court is well aware that this is a chain and ratchet case and not a rear-loading skid case. The record indicates that Weseman testified "There exists nothing whatsoever regarding my post-April 23, 2005 communications with Boydstun Metal Works, Inc., which were considered by myself in forming of my opinions in this case." (Doc. 121 Ex. B. ¶ 2). Moreover, Weseman testified that she has not advised Boydstun on the chain and ratchet system since the April 23, 2005 contract and that she has freely provided all

prior advice.[1] She also has testified in the past that Boydstun soft tie-down systems tests performed in the past do not form the bases of her opinions.[2] Further, Wesman

---

[1] Specifically, Weseman testified:
"A. I'm not involved with his [Boydstun] chain tie-down system at this point.
Q. But you have given him advice on that – about that since the contractual relationship started, or not?
A. I don't think that I have even addressed it since we've developed a contractual relationship.
Q. You've ignored it?
A. I haven't ignored it. We've addressed it in the past, and I've looked at his new product. The old product is what the old product is, and I've criticized it for – what? – 14 years now. The new product is the one that in my opinion is the way to go, and that's the one that I've worked on and tried to suggest redesign issues." (Doc. 132, Exhibit A. p. 198, lines 5-18; Weseman's May 22, 2006 Deposition. in *Clark v. Cotrrell, Inc., et al.*, 04-L-0896 and *McGill v. Cottrell, Inc. et al.*, 04-L-617).
"Q. What about pre-contract? Did you give him any advice regarding chains?
A. Yeah, we did have some discussions. He'd come out with a pneumatic tie-down system and then a hydraulic tie-down system, and both of those systems I encouraged as an alternative to chains. So yes.
Q. Okay. And did you ever advise him that it was – that he was putting – before the contract did you ever advise him that he was putting an unsafe product on the street when he put it out with chains and ratchets, manual ratchets?
A. What I had told him was that the tie-down forces on his ratchets were too high. I don't believe I ever specifically – I don't remember if I ever specifically criticized chains as opposed to using cables. I might have, because he used cables on his hydraulic system, or pneumatic system. But I know that I did specifically address the tie-down forces required to operate his chain system.
Q. What about with respect to sudden releases? Did you talk to him about that prior to the contractual relationship?
A. I'm sure I did.
Q. Okay. And what was the substance of the conversations?
A. Would have been the same thing; that you've got these high forces, sudden releases, guys are getting hurt. And I know at one point I even faxed him the injury statistics, I think my statistics out of that article, and I know I faxed him – there's a pie chart that probably Bill Warnick prepared that's consistent with my data. So I did fax him some injury information long, long ago." *Id.* at ps. 196-197, lines 16 to 23.

[2] "Q. Are there tests of the Boydstun soft tie down system that you've done that you are not at liberty to discuss.
A. Yes.
Q. Okay. And do they form any of the bases of your opinions in this case?
A. No, sir. I will not use them.
Q. Well –
A. Because I can't testify to them.
Q. I understand that. But they are a part of your experience.
A. They are.
Q. And how do you segregate those out?
A. Well, what I've done is gone back and tested the same strap tie-down system independent of my employment with Boydstun.

has not withheld any testimony in this case and Cottrell has not deposed her.[3] Because Cottrell has not shown that the Court's Order contained a mistake of law or fact or that it is clearly erroneous, the Court denies Cottrell's Rule 59 motion to reconsider Order denying motion to bar Plaintiffs' expert Linda Weseman from testifying (Doc. 129).

**IT IS SO ORDERED.**

Signed this 21st day of May, 2007.

/s/     David   RHerndon
**United States District Judge**

---

Q. Okay. And when did you do that?
A. That was done also in 2006." *Id*. at p. 194-195, lines 15-7.

[3]***See Rosenburg v. Cottrell*, 05-cv-0545-MJR, Doc. 238** ("What the Court does not find in Cottrell's motion to bar is any reference to deposition taken *in this matter* where Weseman refused to answer a specific, relevant question because of her relationship with Boydstun.... Yet, Cottrell asks the Court to speculate that Weseman will improperly rely upon information withheld from them, where Weseman states she will not rely upon this information and which, apparently, rather than being withheld has not be sought.  Cottrell cannot ride on the coattails of other decisions in other courts where the facts and circumstances differ from those of the instant action."